(C.D. 2442)

U. S. WOLFSON BROS. CORP. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided April 9, 1964)

*Glickstein, Crenshaw, Glickstein & Hulsey* (*Mark Hulsey, Jr.,* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Daniel I. Auster,* trial attorney), for the defendant.

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) as *amicus curiae.*

Before DONLON and RICHARDSON, Judges

DONLON, Judge: Plaintiff has protested so-called marking duties of 10 per centum assessed by the collector on certain merchandise, imported from Scotland and entered at the port of Jacksonville (Tampa), Fla., on October 29, 1951. There is no controversy here as to regular duties.

The parties have stipulated certain facts, there are exhibits, and there is considerable testimony that was adduced by both plaintiff and defendant.

The merchandise is described as tubular bends, butt welded, joined as steel tubes, of various sizes and dimensions. It is conceded that the tubes were not individually marked to show the country of origin.

There were 200 pieces, or tubes, shipped from Scotland loose, not in containers. However, 10,105 pieces were contained in burlap bags.

There is uncontradicted evidence that, when such tubes were imported, tags were attached to these bags, inscribed with various words in the English language, but all including the word "Scotland" or the words "made in Scotland." There is conflicting testimony as to whether such tags were still affixed to the bags when the importer delivered merchandise to various purchasers, and as to whether purchasers from the importer were ultimate purchasers, in the tariff sense.

This protest raises only one claim that is judicable here. That is the claim that containers of this merchandise were lawfully marked, pursuant to section 304(b) of the Tariff Act of 1930, as amended. There are other protest assertions that are not properly the subject of litigation, such as a claim that plaintiff was unable to return the merchandise for marking, as section 304(c) requires, because of the collector's considerable delay in making demand for its return. Whatever the merits of this assertion may be, Congress has given this court no authority to direct the remission of marking duties on such a ground.

We proceed, therefore, to consider the protest claim under section 304(b).

Section 304(b) is as follows:

(b) Whenever an article is excepted under subdivision (3) of subsection (a) of this section from the requirements of marking, the immediate container, if any, of such article, or such other container or containers of such article as may be prescribed by the Secretary of the Treasury, shall be marked in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of such article, subject to all provisions of this section, including the same exceptions as are applicable to articles under subdivision (3) of subsection (a) of this section. If articles are excepted from marking requirements under clause (F), (G), or (H) of subdivision (3) of subsection (a) of this section, their usual containers shall not be subject to the marking requirements of this section. Usual containers in use as such at the time of importation shall in no case be required to be marked to show the country of their own origin.

Plaintiff's problems of proofs were certainly made more difficult by the fact that liquidation of this entry did not occur until 10 years after entry, and also because plaintiff, a corporation, is no longer in business and, indeed, has been dissolved. Nonetheless, plaintiff has diligently adduced a considerable record.

It is to be noted that subsection (b), on which plaintiff relies, lays down three conditions, namely, that (1) ultimate purchasers in the United States shall (2) receive the merchandise in properly marked containers, if the merchandise itself is excepted from the marking requirement, pursuant to section 304(a)(3) (A), (B), (C), (D), or (E), or (3) if such merchandise is excepted from the marking requirement, pursuant to section 304(a)(3) (F), (G), or (H), the containers are excepted from the marking requirement.

The question we first take up is whether plaintiff's proofs show that the merchandise of this importation, or any identified part of it, was delivered to ultimate purchasers, in the tariff sense of that term, in properly marked containers. If the proofs show that this was so, we shall then consider whether these tubes were excepted from the marking requirement provided the containers of the tubes were properly marked. We defer until later our consideration of whether there were grounds for exception from container marking.

As to certain of plaintiff's customers, there is failure of proof as to whether such customer was, in fact, an ultimate purchaser. It is apparent that some were. Some were not. As to some customers, while there is uncontradicted testimony that they themselves used the tubes and, hence, may be deemed ultimate purchasers, there is failure of proof as to the number of pieces, kind, and value of the merchandise of this entry which those customers purchased. In some instances, at least, there is failure also of proof that merchandise sold to ultimate purchasers was in containers that were properly marked, or indeed in any containers.

Some customers testified that they knew the tubes were of foreign origin, or that they were made in Scotland, because an employee of plaintiff's told them so but not because the containers were marked, as required.

In *United States* v. *Gibson-Thomsen Co., Inc.*, 27 CCPA 267, C.A.D. 98, cited by both parties in their briefs, our appeals court reviewed the term "ultimate purchaser in the United States." In that case, wood brush blocks and toothbrush handles were imported from Japan. The evidence was clear that, at the time of importation and delivery to manufacturers of toothbrushes and hairbrushes, these imported blocks and handles were conspicuously marked with the word "Japan." In the manufacture of brushes, using the imported materials together with bristles, the markings on the blocks and handles were obliterated by the bristles. The statutory language construed required such marking as is not likely to be defaced, destroyed, removed, altered, covered, obscured, or obliterated by the treatment or use made of the imported articles *before they reach the ultimate purchaser.*

The question presented was whether the purchasers of toothbrushes and hatbrushes, on the one hand, or the manufacturers of those articles, on the other, were the ultimate purchasers of the imported blocks and handles. Our appeals court cited with approval the holding of the trial court that:

* * * the processes necessary to convert toothbrush handles and wood brush blocks like those here involved into toothbrushes and hairbrushes, respectively, are manufacturing processes; that, as a result of such manufacturing processes, the imported toothbrush handles and wood brush blocks lose their identity as

such, and become new articles having, respectively, a new name, character, and use; that as such new articles are produced in the United States they are products of the United States; that the language "ultimate purchaser in the United States," as used by the Congress in section 304(a), *supra*, was intended to mean the "ultimate purchaser of the imported article"; that, within the purview of section 304(a), *supra*, the manufacturer of hairbrushes and toothbrushes is the ultimate purchaser of the involved and like imported articles; and that neither the Congress in enacting that section, nor the Treasury Department in issuing regulations in accordance therewith (article 528, Customs Regulations, 1937, as amended, T.D. 49658, said amendment being article 528(h)), contemplated that articles like those here involved should be so marked as to indicate to the purchaser of the finished hairbrushes and toothbrushes that the wood brush blocks and the toothbrush handles were made in a foreign country. [*United States* v. *Gibson-Thomsen Co., Inc., supra*, pp. 269, 270.]

In *Grafton Spools, Ltd.* v. *United States,* 45 Cust. Ct. 16, C.D. 2190 (not appealed), this division held that the ultimate purchasers of imported empty machine spools are the manufacturers of business machines and of machine ribbons who buy the spools to be incorporated into business machines or wound with ribbons to be used in such machines. Hence, the containers in which the spools were imported and shipped to the manufacturers, being marked clearly to show that the spools were made in England, constituted sufficient marking. It was not necessary that each individual spool should be so marked in order to bring notice to the manufacturers, the ultimate purchasers of the imported spools.

We are of opinion that the proofs are inadequate to show that the entry merchandise, or any identified pieces thereof, were delivered to ultimate purchasers in containers that were marked in compliance with section 304(b). This makes it unnecessary for us to consider, as to the individual pieces, whether any of the exceptions provided in section 304(a)(3) (A), (B), (C), (D), and (E) are applicable to this merchandise.

Is the merchandise excepted from the marking requirement under clauses (F), (G), or (H) of section 304(a)(3)?

Plaintiff makes no claim under clauses (F) or (G). It is contended, however, that these tubes are excepted from the marking requirement, whether in or out of containers, pursuant to clause (H), by virtue of the provisions of section 304(b). Section 304(a)(3)(H) is as follows:

(a) Except as hereinafter provided, every article of foreign origin (or its container, as provided in subsection (b) hereof) imported into the United States shall be marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article (or container) will permit in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article. The Secretary of the Treasury may by regulations—

\*     \*     \*     \*     \*     \*     \*

(3) Authorize the exception of any article from the requirements of marking if—

\*     \*     \*     \*     \*     \*     \*

(H) An ultimate purchaser, by reason of the character of such article or by reason of the circumstances of its importation, must necessarily know the country of origin of such article even though it is not marked to indicate its origin;

The Secretary of the Treasury has issued regulations, under section 304(a), which authorize the exception that was specified by Congress in section 304(a) (3) (H).

No contention is made that the character of these tubes is such that an ultimate purchaser, without marking, "must necessarily know the country of origin." There seems little doubt that such a contention could not be made. Indeed, Mr. John H. Zink, Sr., witness for plaintiff, testified that fittings, such as those here involved, were imported also from countries other than Scotland. (R. 87.) This uncontradicted testimony would indicate that an ultimate purchaser could not, absent marking, "necessarily know" what the country of origin was.

The other provision of section 304(a) (3) (H) grants exception from the marking requirement if an ultimate purchaser of an article "by reason of the circumstances of its importation, must necessarily know the country of origin of such article," even though it is not marked.

Plaintiff relies on this provision, contending that the circumstances of importation of these tubes were such that any ultimate purchaser must necessarily know that they were made in Scotland. We proceed now to review the record developed on that issue, and the arguments which plaintiff has advanced in support of its contention.

The testimony of Mr. Zink, Sr., referred to, *supra*, casts doubt on any assumption that circumstances of importation were such that he necessarily knew these tubes were made in Scotland. That they were recognized as foreign, is not enough to meet the statutory test.

There is testimony that, by reason of market conditions in the United States in the early 1950's, it was known that such tubes as these were being imported. But from what country or countries? No one has said that these tubes were imported *only* from Scotland. To the contrary, they were imported from other countries, as well, as noted above.

Plaintiff argues that it told all of its customers, either through sales media or personally, or both, that these tubes were made in Scotland (plaintiff's brief, p. 22) and that this satisfies the criteria set by section 304(a) (3) (H). We do not agree.

We find no prior judicial construction of the language now under consideration, and the proceedings in Congress when the Customs Administrative Act of 1938 was pending throw little light on the congressional intent behind the words "circumstances of its importation."

The analysis of the bill, submitted by the Treasury Department, has the following comment about clause (H):

Paragraph (H) is designed to permit the exemption of a class of articles from the requirements of marking when the country of origin of such articles can be immediately identified because of their unique or distinctive appearance. [Hearings before Committee on Ways and Means, House of Representatives, 75th Congress, 1st Session, H.R. 6738, at pp. 130–131.]

The Bureau of Customs from time to time issues bulletins, giving customs information to exporters of merchandise to the United States. Such a bulletin, issued in 1950, was entitled "Customs Information for Exporters to the United States." A later bulletin, issued in 1958, is entitled "Exporting to the United States." While such informational material obviously does not have the force of law, and is not even revelatory of prior congressional intent, the fact that the language "circumstances of its importation" is explained in identical terms in both bulletins is at least a representation of the course of administration which, until now, seems not to have been challenged. Section 304 was amended by Congress in 1953, but there was no amendment of either the term "circumstances of its importation" or the term "ultimate purchaser in the United States."

For whatever it may be worth, the following is the statement in both of the above-noted bulletins, or pamphlets:

An article with respect to which an ultimate purchaser in the United States, by reason of the character of the article, or by reason of the circumstances of its importation, must necessarily know the country of origin even though the article is not marked to indicate its origin.

The clearest application of this exemption is when the contract between the ultimate purchaser in the United States and the supplier abroad insures that the order will be filled only with articles grown, manufactured, or produced in a named country. [1950 bulletin, p. 32; 1958 bulletin, p. 30.]

Even if the contention of plaintiff as to its advertisement of these tubes met the conditions of the statutory language "circumstances of its importation" (and we are of opinion it does not), nevertheless, the circumstances must be such as to bring the notice of country of foreign origin to the *ultimate purchasers* of the imported merchandise, with some of whom plaintiff had no dealings.

On the record before us, we cannot find that all tubes of these importations were, when delivered to *ultimate purchasers*, packed in containers that were sufficiently marked. Some of plaintiff's customers did use some tubes, but some customers resold tubes. There is no clear evidence that resold tubes were shipped in marked containers. There is no evidence that the circumstances of importation were such as to bring to *ultimate purchasers* notice that these tubes were made in Scotland.

If there were clear evidence identifying certain tubes of this importation as having been delivered to *ultimate purchasers* in sufficiently marked containers, we might grant relief *pro tanto* as to such merchandise. We may not indulge in speculation as to the quantity, kinds, and values of the merchandise items which might meet the statutory test.

The protest is overruled. Judgment will be entered accordingly.